**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No.: 21-CV-81808-AMC-CANNON/**

| | |
|---|---|
| Salgiobria Enterprises, LLC, a Florida limited liability company, on behalf of itself and those similarly situated, | **CLASS REPRESENTATION** |
| Plaintiff, | **AMENDED CLASS ACTION COMPLAINT** |
| v. | **Jury Trial Demanded** |
| Cheney Brothers, Inc., a Florida corporation | |
| Defendant. | |

Plaintiff, Salgiobria Enterprises, Inc. ("Salgiobria" or "Plaintiff"), brings this Class Action Complaint on behalf of itself and all others similarly situated. Allegations in this Class Action Complaint are based upon Plaintiff's experiences, counsel's investigation, and information and belief. Plaintiff hereby alleges the following in support of this Amended Class Action Complaint.

## NATURE OF THE ACTION

1.      Plaintiff, a Winter Haven, Florida restaurant company, regularly orders and receives deliveries of raw and frozen food that it cooks and prepares for its customers. Like many restaurants and other businesses, Plaintiff orders food based on bulk net weight as represented by distributors' sales staff and invoices, including Poultry and other packaged foods, from food distributors. The weight of these food deliveries is important to such businesses, not only so restaurants have predictable food for their customers, but also because reliable pricing allows businesses to calculate their budgets and pricing. Plaintiff and the class members make payment on the invoices based upon the number of pounds of the product described times the number of

pounds ordered.  Plaintiff discovered that its supplier, Defendant, Cheney Brothers, Inc., ("Cheney Brothers" or "Defendant"), has been shorting deliveries of poultry (the "Poultry") for Plaintiff and other businesses as compared to what is described by Defendant's invoices, and the amount of Poultry Plaintiff paid for based upon Defendant's representations.

2.      From at least September 15, 2017 to the present (the "Class Period"), Cheney Brothers delivered smaller quantities of chicken than it promised it would deliver when compared to the descriptions on the invoices.  Cheney Brothers' Poultry weighed materially less than the represented, priced, invoiced, accepted payment for as sold weights, thereby unlawfully increasing their effective prices to Plaintiff and the Class (Cheney Brothers' "Shorting Practice").

3.      Cheney Brothers' Poultry, thawed and weighed soon after unloading from delivery trucks, weighs less than the advertised, represented, invoiced, agreed, and sold weight.  Cheney Brothers' weights are shorted in weight, so that orders are as much as 5.25% lighter than the paid-for amount.

4.      These significant, material representative inaccuracies on the invoices about the Poultry weight resulted in deficient deliveries for Plaintiff and the Class when compared to deliveries that were promised, while unlawfully enriching Cheney Brothers.

5.      Therefore, Plaintiff brings this action on behalf of a class of buyers nationally or, in the alternative, located in Florida who purchased Poultry from Cheney Brothers.  Plaintiff seeks actual damages, refunds, injunctive relief, attorneys' fees, and the costs of this litigation.

## PARTIES

**A.      Plaintiff**

6.      Salgiobria is a Florida corporation with its principal place of business in Winter Haven, Florida.  Salgiobria operates two Winter Haven restaurants and does business with the restaurants' business names:  DiMaggio's Italian Restaurant, and Giovanni's New York Pizza.

During the Class Period, Salgiobria purchased Poultry from Cheney Brothers at weights and prices described by Defendant's invoices that materially misrepresented package weights. Salgiobria was, therefore, deceived by Cheney Brothers into paying for more Poultry than Salgiobria received. Salgiobria acted as a consumer in that it bought Poultry from Defendant and paid for the amounts represented on Defendant's invoices. Accordingly, as described further in this Complaint, Salgiobria is a "consumer" for purposes of Fla. Stat. § 501.203(7).

**B.      Defendant**

7.      Cheney Brothers is a Florida corporation with its principal place of business in Riviera Beach, Palm Beach County, Florida. Cheney Brothers is described as a "leading distributor" in Florida that, in recent years has expanded its operations in Georgia, South Carolina, and North Carolina. As a distributor, Cheney Brothers sells Poultry and other packaged foods to restaurants that, in turn, sell to consumers, making Cheney Brothers a distributor rather than a retailer.

## JURISDICTION

8.      Plaintiff's claims give this Court subject matter jurisdiction over the claims under Fla. Stat. §§ 26.012, 86.011. The Court has jurisdiction over this case because this Complaint seeks damages in excess of $30,000.00, exclusive of interest and attorneys' fees, costs, and expenses.

9.      Palm Beach County is a proper venue for this case pursuant to Fla. Stat. §§ 47.011, 47.051. Defendant has its corporate headquarters facility and does business in this County, and the cause of action accrued in this County.

10.      Defendant's conduct gives this Court personal jurisdiction over Defendant under Fla. Stat. § 48.193. Defendant personally, or through its agents, operated, conducted, engaged in, and carries on a business in Florida, operates offices, distribution facilities, a stockyard, and a

seafood operation in Florida, committed tortious acts in Florida, and engaged in significant business activity within Florida.

## FACTUAL ALLEGATIONS

**A.    Chicken Is an Important American Food**

11.    American food chicken is descended from the Southeast Asian red jungle fowl first domesticated in India around 2000 B.C.  Although over 500 chicken breeds exist, most chickens raised for meat in the United States are descended from a cross between Cornish and White Rock breeds.  Food chickens include broiler-fryer chickens, roaster chickens, capons, stewing hens, and Rock Cornish game hens.

12.    "Fresh" poultry refers to raw poultry products that have never been held below 26 degrees Fahrenheit.  Poultry held at zero degrees Fahrenheit or below is considered "frozen" or "previously frozen."

13.    In 2020, United States consumers spent $110 billion on chicken.  The average consumption of chicken per capita in the United States has increased from 77.4 pounds in 2000 to an estimated 97.5 pounds in 2020 and a projected 98.0 pounds for 2021.

14.    Chicken for food is grown on farms, slaughtered at poultry processing plants, and then sold to distributors, such as Cheney Brothers.  Distributors sell the poultry to restaurants, such as Plaintiff's restaurants, and other food servers, such as hotels and hospitals.  Restaurants, acting as hosts and retailers, prepare the cooked food sell it to consumers, their retail customers.  The process is shown in this diagram of the restaurant poultry value chain.



15.     About 25,000 U.S. family farms have production contracts with 30 integrated chicken production companies.  In 2018, they produced more than 9 billion broiler chickens, the most common food chicken.  That 2018 production weighed 56.6 billion pounds.  The top five broiler production states are Georgia, Arkansas, Alabama, North Carolina, and Mississippi.

16.     The average chicken weighs about six pounds at harvest.  Producers attempt to raise chickens of uniform size, which work better for the machinery in the processing plants.  At processing plants, the chickens are stunned, slaughtered, eviscerated, cleaned, rinsed, and chilled.  They are cut up into different products and shipped to distributors.

17.     According to the National Chicken Council, in the later processing phases after evisceration, the chickens are typically dumped in fluids for cooling and washing.  This image shows a chicken carcass being ejected and about to land in a vat of fluid.[1]

---

[1] Image of video, from *Processing:  How Are Chickens Slaughtered and Processed for Meat*, Chicken Check in, https://www.chickencheck.in/faq/how-chickens-slaughtered-processed/ (accessed October 16, 2021).



18.    The following image shows chickens floating in another chilling bath.[2]



19.    This process is highly likely to add fluids to the poultry.  U.S.D.A. found that 78% of chicken, or 38,532 millions of pounds of chicken, and 75% of turkey, or 5,194 million pounds of turkey, contained added solutions in 2010.[3]  Together, this comes to 43,726 million pounds of poultry with added solutions.

---

[2] *Id.*

[3] Department of Agriculture, *Descriptive Designation for Raw Meat and Poultry Products Containing Added Solutions*, 79 Fed. Reg. 79,044, 79,056 (Dec. 31, 2014).

20.     Distributors like Cheney Brothers market to and contract with restaurants and other food operators and are subject to contractual obligations and statutory duties not to use deceptive or unlawful sales and marketing practices.

**B.      Food Service Distributors and Operators**

21.     The National Restaurant Association projected $899 billion in sales for the restaurant and food service industry in 2020.  Half of the adults in the United States have worked in food service in one way or another during their lives, often beginning their work lives in restaurants.  The industry includes firms that prepare and serve food, and firms that distribute food, equipment, and services.

22.     Cheney Brothers is a large food service distributor.  Food service distributors act as intermediaries between food producers and food operators like retailers and restaurants. Distributors purchase, store, sell, and deliver food products, providing access to food to the retailers and grocers.

23.     Four kinds of food service distributors are (1) broadline distributors, (2) specialty distributors, (3) redistributors, and (4) cash and carry distributors.  Broadline distributors carry thousands of different products for a broad range of food operators.  Specialty distributors, such as seafood distributors, focus on certain narrower food categories than broadline distributors. Redistributors buy directly from producers, and break down shipment quantities for smaller, local, or niche distributors, sometimes breaking shipments down into less-than-truckload quantities. Cash and carry distributors are those that do not deliver merchandise; some cash and carry distributors operate as restaurant suppliers for smaller restaurants and similar food operators.

24.     Broadline distributors, such as Cheney Brothers, sell and deliver food to a variety of food service operators, including restaurants, hospitals, hotels, school cafeterias, and other places where people eat food away from home.  Food service operators depend on broadline

distributors for frequent delivery service, product depth and breadth, and in some cases services like order tracking, menu planning, and nutrition analysis.  Broadline distributors tend to use larger distribution centers than other distributors.

25.     "Food operators" refers to retail level food sellers, of which the United States has over 1.2 million.  They include the over 640,000 restaurants in operation prior to the Covid-19 pandemic, along with 264,125 retail service firms, such as supermarkets and convenience stores.

26.     The $899 billion in projected 2020 restaurant and food service industry sales included $617.5 billion for commercial eating places like restaurants, and $3 billion for military restaurant services.  Florida had 41,366 eating and drinking locations in 2018, generating an estimated $50.1 billion in sales.

27.     Restaurants tend to be smaller businesses.  Nine in ten restaurants have fewer than 50 employees.  Seven in ten restaurants are single-unit operations.

**C.     Defendant Cheney Brothers' Business and Marketing**

28.     Cheney Brothers is a large regional food distributor operating in the Southeastern United States.  Joseph Cheney founded the company in West Palm Beach, Florida, in 1925.  Although still privately owned, Cheney Brothers has grown to a substantial corporation with over $2 billion in annual revenue.  Cheney Brothers is reported to distribute to thousands of customers in the Southeast United States, and to export products to distributors in South America and the Caribbean.

29.     Cheney Brothers sells food products including Poultry, frozen meats, juices, and canned fruits.

30.     A recent article about an interview with Cheney Brothers president, John Reisigl, stated Cheney Brothers mainly provides food for hotels, restaurants, country clubs, and other facilities.  Mr. Reisigl stated, "[f]or what we do at Cheney Brothers, we don't do any retail sales.

All of our sales are to restaurants, hotels, country clubs.  We're a food service distributor, as opposed to a retail distributor."[4]

31.     Cheney Brothers has advertised that its technology helps restaurants and other customers.  Cheney Brothers' online brochure claims all its distribution centers had "completely computerized product selection and barcode processing tracking systems for inventory."  The brochure stated its order pickers had "a wearable computer with a headset and microphone-instructed by voice on what items to pick and where to pick them."  It further stated Cheney's "Cadec Fleet Management system *assures accurate deliveries* on and off the truck."[5]

32.     Cheney Brothers' brochure also touts its delivery systems, with advanced GPS monitoring and tracking.  It claims its "Delivery Tracker" features "bar code scanning, invoice printing, real time billing information, along with electronic signature capture ensures *customer confidence in complete and accurate delivery*."[6]

**D.     Cheney Brother's Shorting Practice Deceived and Harmed Plaintiff and Class Members**

33.     **Plaintiff's Business and Intended Food Ordering**:  Salgiobria shops for Packaged Foods based on weight and corresponding pricing and considers this weight-based pricing a material element in making business decisions, since it assists Salgiobria with forecasting costs over its respective fiscal periods.

---

[4] Liz Hardaway, *We're Still Selling Quite a Bit of Food*, Sun Port Charlotte (April 29, 2020), https://www.yoursun.com/charlotte/were-still-selling-quite-a-bit-of-food/article_c30969e8-8a3d-11ea-a3b0-9f9d4f836af7.html (accessed March 29, 2021).

[5] *Cheney Brothers – Leading Food Distributor, Serving the Southeast and the World Since 1925*, http://cbicatalogs.com/pdf/2013%20COMPANY%20BROCHURE.pdf (accessed March 29, 2021).

[6] *Id.* (emphasis added).

34.     When Plaintiff or other businesses order Poultry from Cheney Brothers, they do so based on bulk weight.  That weight is important to Plaintiff and the Class, not only because a certain weight is necessary for their business operations (namely cooking for their customers), but also because pricing is calculated by that weight.  Cheney Brothers' weighted pricing as represented on its invoices, as marketed and in theory, allows its customers to make informed purchasing decisions and forecast costs during their fiscal budgeting periods.

35.     **The Parties' Agreement and Cheney Brothers' Representations**:  Plaintiff and Cheney Brothers agreed that Cheney Brothers would sell Poultry to Plaintiff and submit invoices for Plaintiff to pay.  They agreed the Poultry would be priced by an agreed-upon amount for standard 40-pound boxed cases of chicken wings, and an agreed-upon amount for standard 20-pound boxed cases of chicken breasts.  Plaintiff and Cheney Brothers agreed that Cheney Brothers would fix the price per case.  Pursuant to their agreement, Cheney Brothers was obligated to set this price per 20- or 40-pound case in good faith, using the actual weight of the 20- or 40-pound cases, net of packaging.  This price per 20- or 40-pound case and described on the invoices was the true price under the agreement.  Copies of invoices showing the agreement and various shipments are attached as Exhibits 1 to 4 of this Complaint.  Exhibits 1 to 4 are incorporated by reference into this Complaint.  The quantities of the Poultry deliveries were a material term to Plaintiff so Plaintiff could budget and plan menus and marketing so as to not run short of food for restaurant guests and, further, ensure that it was not being overcharged for the Poultry.

36.     Cheney Brothers sent invoices and deliveries of Poultry which purported to conform to Defendant's description to Plaintiff.  Plaintiff accepted the goods and paid the invoiced amount.  In this way, the parties' conduct recognized the existence of the agreement.  The invoices show Cheney Brothers' sales representative was Robert S. Sheffield.

37.    **Plaintiff's Orders Under the Agreement**:  Prior to purchasing Cheney Brothers'
Poultry, Salgiobria relied upon the false and misleading statements on the invoices that Cheney
Brothers and its agents prepared, approved, and disseminated regarding weights and corresponding
prices for the orders.  For each purchase, Salgiobria understood that it was paying a specific price
for a specific, actual and accurately stated net weight amount of Poultry.

38.    For example, Exhibit 1 is an invoice from Cheney Brothers to Giovanni's New
York Pizza that includes six cases of chicken wings (labeled "Chix Winger"), to be delivered
December 5, 2020.  The chicken wings were to weigh the standard 20 pounds per case.  The price
was $74.90 per case, for a chicken wing subtotal of $449.70.

39.    Similarly, Exhibit 2 is an invoice from Cheney Brothers to DiMaggio's Italian
Restaurant, for a shipment to be delivered on January 9, 2021.  The invoice includes an order for
800 pounds of cut jumbo chicken wings.  The price is $2.09 per pound.  That item's subtotal price
is $1,672.00.  ($2.09 x 800 = $1,672.00).

40.    Exhibit 3 is an invoice to DiMaggio's Italian Restaurant for 30 cases of Cheney
Brothers' chicken wings, due February 11, 2021.  The price was $74.95 per case, for a total of
$2,248.50.  As the parties agreed, chicken wings were to weigh 20 pounds per case.  The weight
to be delivered was 1,200 pounds, specified in the weight column.

41.    Similarly, Cheney Brothers and Plaintiff agreed the chicken breasts that Cheney
Brothers delivered would weigh a standard 40 pounds per case.

42.    **Cheney Brothers' Delivery In Breach Of the Parties' Agreement**:  Cheney
Brothers' actual deliveries of the Poultry were lighter than the advertised, represented, priced, and
sold weight.  Cheney Brothers' promised weights were inflated when compared to Defendant's
product description on its invoices, so Plaintiff's orders were as much as 5.25% lighter than the

weight Cheney Brothers promised, and Salgiobria paid for the amount of Poultry described on the invoices.  These significant, material, inaccuracies resulted in different prices for Plaintiff and the Class from the promised prices, while unlawfully enriching Cheney Brothers.

43.    As noted above, Exhibit 2 is a Cheney Brothers invoice documenting a DiMaggio's Italian Restaurant order for Chicken Wings to be delivered on January 9, 2021.  The Chicken Wings were to arrive in 40-pound cases.  A case was tested.  Frozen, it weighed 39.69 pounds. Thawed, it weighed only 35.725 pounds, as shown in this picture.



44.     Exhibit 4 is a Cheney Brothers invoice documenting an order from Giovanni's New York Pizza to Cheney Brothers for delivery on March 16, 2021.  Robert S. Sheffield is Cheney's sales representative.  Exhibit 4 is for five cases of chicken breast, each a 40-pound case.  The price is $1.23 per pound.  The total weight of the five cases was supposed to be 200 pounds, with a charge of $246.00.  (5 cases x 20 pounds x $1.23 = $246.00).

45.     Exhibit 4 also charges for two cases of chicken breast filet, each a 40-pound case. The price is $1.24 per pound.  The total weight of the two cases was supposed to be 80 pounds, leading to a $99.20 charge for the chicken breast filets.  (2 cases x 40 pounds x $1.24 = $99.20).

46.     Five cases of chicken breasts appeared with this delivery.  The cases of chicken breasts contained four bags of chicken breasts per case.  Giovanni's weighed the frozen bags from one case, which, frozen, weighed 10.05 pounds each.  Upon defrosting and draining of water, a bag weighed only 9.475 pounds, short 0.525 pounds or 5.25%.  The shortage means each case would be short 2.1 pounds, and the five chicken breast cases would be short 10.5 pounds of chicken.  (0.525 pounds x 4 bags x 5 cases = 10.5 pounds).

47.     The thawed short-changed chicken breast bag weighed only 9.475 pounds.



48.     Salgiobria also ordered chicken for Cheney Brothers to deliver to Giovanni's New York Pizza on April 8, 2021, including 400 pounds worth of 40-pound cases of Chix Drummettes and 240 pounds worth of 40-pound cases of "Chix Breast Random."

49.     When thawed after delivery, a case of the chicken breasts weighed only 35.27 pounds instead of 40 pounds.



50.     When thawed, a case of the Chix Drummettes weighed only 35.04 pounds, instead of the 40 pounds for which Salgiobria contracted and paid.



51.     **Cheney Brothers Shorting Practice**:  As revealed in Plaintiff's above experience, Cheney Brothers' delivered weights were short by several pounds from their advertised and

represented weights, so Plaintiff's orders were as much as 5.25% lighter than the paid-for amount. This material deficiency exceeded what a buyer, acting reasonably, would reasonably anticipate could occur in packing, shipping, or delivery. These significant, material inaccuracies resulted in materially different prices per pound than expected for Plaintiff and the Class, while unlawfully enriching Cheney Brothers.

52.     The amount of fluids found in the chicken, along with normal chicken rinsing and chilling practices, indicate that the chicken from Cheney includes material added fluids. Cheney's warranties and promises to Salgiobria omit any information about added water or fluid in the chicken to be delivered. Nothing in the contract documents between Cheney and Plaintiff disclose that water, fluid, or liquid was added or otherwise define how the additional water, fluid, or liquid is calculated in determining pricing. These omissions and lack of pricing disclosures caused the description of the goods to be non-conforming, caused the pricing to be overstated, and otherwise caused what Cheney promised to conflict with what Cheney delivered.

53.     Plaintiff's claims are based on state law and documents apart from labels and do not implicate federal poultry inspection statutes or federal regulations, among other reasons because here Cheney is a distributor rather than a packer or processor. Alternatively, however, if Cheney can step into its producer's shoes and claim U.S.D.A. regulations apply, then federal regulations create federal requirements that Cheney violated because of its misleading statements and omissions of this significant information. First, federal regulations require that poultry product names that do not meet a standard of identity "must contain a descriptive designation that includes" the percentage of added fluids the chicken contains. 9 C.F.R. § 381.117 (h)(1). The name must also include the common or usual names of individual or multi-ingredient components in the added fluid solution. *Id.* § 381.117 (h)(3). The product name and descriptive designation "must be

printed in a single easy-to-read type style and color and must appear on a single-color contrasting background."  Any lower case letters must be at least one-third the size "of the largest letter."  *Id.* § 381.117 (h)(4).  This requirement is in addition to separate regulations requiring disclosure of retained water.  U.S.D.A. gave the example of a product properly named as, "Chicken Breast Flavored with 15% Added Solution of Water, Salt, Spices, and Sodium Phosphate."[7]

54.     Cheney violated 9 C.F.R. § 381.117 in that it failed to disclose fluids added to the chicken it sold Plaintiff.  As shown in Exhibits 1 through 4 to this Complaint, Cheney's invoices, advertising, and other communications with Plaintiff refer to chicken sold but do not mention fluids added to the chicken, and do not list the added fluids' ingredients, let alone making it part of the product name, as required by § 381.117.

55.     Again alternately to pure state law claims, if the federal poultry inspection statute and regulations apply, then Cheney's misleading statements and omissions violate federal regulations in a second way, further creating parallel state and federal violations.  NIST Handbook 133:  Checking the Net Contents of Packaged Goods at 26-27 & Table 2-3 (Nov. 2019) allows only a 3% allowance for moisture loss, which Cheney's shortfalls exceeded, violating both state and federal law.

56.     By shorting its promised deliveries during the Class Period from September 15, 2017 to the present, Cheney Brothers, represented, effectively priced, and sold the Poultry at false prices that materially misrepresented package weights.  In other words, upon inspection, Cheney Brothers Shorting Practice was that Cheney delivered Poultry that weighed materially less than

---

[7] Department of Agriculture, *Descriptive Designation for Raw Meat and Poultry Products Containing Added Solutions*, 79 Fed. Reg. at 79,054.

the represented, priced, and sold weights, thereby unlawfully increasing the prices to Plaintiff and the Class.

57.     By failing to deliver the correct weight of the Poultry—and still charging for an inflated weight—Cheney Brothers' Shorting Practice deprived buyers of accurately informed purchasing decisions and forecasting.  Cheney Brothers used Shorting Practices that were deceptive, unfair, and unconscionable, depriving restaurants of their Poultry's promised value.

58.     Cheney Brothers delivering a lower weight of Poultry than promised during the Class Period directly damaged Plaintiff and Class members by causing them to pay inflated prices for their Poultry.

59.     Cheney Brothers' consistent delivery of deficient underweight Poultry was designed to, and did, induce consumers, including Plaintiff and Class Members, into believing that they were receiving more of the Poultry than Defendant actually delivered.

60.     Cheney Brothers induced Plaintiff and Class Members to purchase less of the Poultry at a higher effective price.  Plaintiff and Class Members relied on Cheney Brothers' false, deceptive, unfair, and unconscionable marketing, advertising, warranties, and representations to their detriment.  Plaintiff and Class Members would not have purchased the Poultry or, at the very least, would have demanded the appropriate price upon purchase had they known Cheney Brothers' scanty quantities were so deceptive, and unfair, in that the Poultry delivered was consistently less than the promised and represented weight.

61.     During the Class Period, Plaintiff and Class Members have suffered millions of dollars in collective damages.

62.     Upon information and belief, Cheney Brothers continues to employ this deceptive, unfair, and unconscionable Shorting Practice from which it has reaped millions of dollars in unlawful gains.

**CLASS REPRESENTATION ALLEGATIONS**

63.     Plaintiff, individually and on behalf of all others similarly situated, brings this lawsuit on behalf of itself and as a class action based on Fed. R. Civ. P. 23, on behalf of the following class:

> All persons and entities in the United States, and its Territories, that purchased Poultry products from Cheney Brothers and took delivery from September 15, 2017 to present (the "Class").

64.     In the alternative, Plaintiff, individually and on behalf of all others similarly situated, brings this lawsuit on behalf of itself and as a class action based on Fed. R. Civ. P. 23, on behalf of the following class:

> All Florida persons and entities that purchased Poultry products from Cheney Brothers and took delivery in Florida from September 15, 2017 to present (the "Class").

65.     Excluded from the Class are Defendant and any entities in which any Defendant or its subsidiaries or affiliates have a controlling interest, and Defendant's officers, agents, and employees.  Also excluded from the Class are the Judges assigned to this action, members of the Court's staff, and any member of the Judges' immediate family.

66.     **Numerosity:**  The members of the Class are so numerous that joinder of all members of the Class would be impracticable.  While Plaintiff does not know the exact number of Class Members, Plaintiff reasonably believes that the Class includes thousands of Class Members.

67.     **Commonality:**  The claims in this action raise questions of law and fact common to the questions of law or fact raised by the claims of each Class Member, and those issues are common as to all Members of the Class.

68.     Common questions affecting individual Class Members include:

a.      Cheney Brothers' policies and practices regarding weighing and packing Poultry merchandise for delivery to customers;

b.      Cheney Brothers' policies and practices for representing the Poultry's weight to the Plaintiff and Class members;

c.      Cheney Brothers' policies and practices for representing the Poultry's weight by its sales staff to the Plaintiff and Class members;

d.      Cheney Brothers' policies and practices for representing the Poultry's weight on the invoices given to the Plaintiff and Class members;

e.      Whether Cheney Brothers' acceptance of payment for the invoiced amount estops it from challenging the Poultry's higher price per pound when compared to the amount stated on the invoice paid;

f.      Whether Cheney Brothers' conducted tests of on some or all of the Poultry for weight and water content to determine the accuracy of its invoices;

f.      Cheney Brothers' policies and practices regarding pricing Poultry merchandise and other Packaged Foods;

g.      Cheney Brothers' policies and practices regarding delivering Poultry merchandise to customers;

h.      Whether Cheney Brothers violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201;

i.      Whether Cheney Brothers' short-changing Plaintiff and Class Members Poultry deliveries constituted unfair, deceptive, and/or unconscionable conduct;

j.      Whether Cheney Brothers breached its contracts with Plaintiff and Class Members by shortchanging restaurant deliveries for Poultry the restaurants ordered;

k.      Whether Cheney Brothers breached its warranties regarding the Poultry net weight;

l.      Whether Cheney Brothers was unjustly enriched by shortchanging Poultry delivery weight and/or misstating the price paid for the net weight;

m.      Whether Plaintiff and Class Members sustained actual damages; and

n.   Whether Cheney Brothers should be enjoined from continuing to short consumers deliveries of the Poultry weight and/or misstating the Poultry net weight price on its invoices.

69.   Similar or identical statutory and common law violations, business practices, and injuries are involved in this case.  Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous common questions that predominate this action.

70.   **Typicality:**  Plaintiff's claims are typical of the claims of the other members of the Class.  Plaintiff's claims and injuries arise from substantially uniform misconduct by Defendant. Plaintiff and other Class Members purchased and took delivery of Poultry from Cheney Brothers. Plaintiff advances the same claims and legal theories on behalf of itself and all other Class Members, and there are no defenses that are unique to Plaintiff.  Plaintiff's claims and those of other Class Members arise from the same operative facts and are based on the same legal theories.

71.   **Adequacy:**  Plaintiff will adequately represent and protect the interests of each Class Member.  Plaintiff is an adequate representative of the Class.  Plaintiff's interests do not conflict with the interests of the other Class Members Plaintiff seeks to represent.  Plaintiff has retained counsel competent and experienced in complex class action litigation, and Class Counsel and Plaintiff will prosecute this action vigorously.

72.   **Predominance:**  Pursuant to Fed. R. Civ. P. 23(b)(3), questions of law and fact common to Class Members predominate, in both quantity and quality, over any questions affecting only individual Class Members, including legal and factual issues relating to liability and damages.

73.   **Superiority:**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy.  No unusual difficulties are likely to be encountered in the management of this matter as a class action.  The damages, harm, or other financial detriment suffered individually by Plaintiff and Class Members are relatively small compared to the burden and expense required for litigating their claims on an individual basis against Defendant, making

it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, it would involve thousands of lawsuits and substantially burden the court system.  Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

74.     Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief to Class Members as a whole is appropriate.

## CAUSES OF ACTION

### COUNT I
### DECEPTIVE AND UNFAIR TRADE PRACTICES ACT - DECEPTION

75.     Plaintiff realleges the allegations contained in each paragraph above, as if fully set forth herein.

76.     The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.,* ("FDUTPA") protects "the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practice in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).  FDUTPA is a remedial statute that protects against practices that are immoral, unethical, oppressive, unscrupulous, or that substantially injure consumers, and intends to make consumers whole for losses caused by fraudulent consumer practices.

77.     Plaintiff is a "consumer" as defined by Florida Statute § 501.203(7).  FDUTPA explicitly and expansively defines a statutory "consumer" to include businesses like Plaintiff:

"Consumer" means an individual; child, by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity, however denominated; or any other group or combination.  Fla. Stat. § 501.203(7).

In this case, Plaintiff acted as a consumer because it bought from Defendant, and paid for, Packaged Foods, consisting of Poultry, as described further in this Complaint.

78.     Plaintiff's subject transaction for Poultry is "trade or commerce" as defined by Florida Statute § 501.203(8).  As defined by FDUTPA, "trade or commerce" includes soliciting, offering, distributing, by sale or otherwise, any good, service, or tangible or intangible property or commodity.  *Id.*  Defendant offered, sold, and distributed the Poultry, and other Packaged Foods, to Plaintiff and other buyers within the State of Florida, engaging in Florida trade and commerce.

79.     Cheney Brothers violated FDUTPA because it delivered Poultry to Plaintiff that weighed less than Cheney Brothers represented, and contrary to how it represented the Poultry would be packaged and priced.  Defendant represented it charged weight-based prices but delivered less weight than represented, without adjusting the price.  Defendant thereby marketed and sold Packaged Foods at one price and weight but delivered less than sold, effectively increasing the price and engaging in an unlawful and deceptive practice in violation of FDUTPA, Fla. Stat. § 501.204.

80.     Defendant's unfair and deceptive practice described in this Complaint deceived Plaintiff and was likely to deceive members of the pubic (including Plaintiff and other Class Members) to their detriment, despite the buyers acting reasonably under the circumstances.

81.     In committing the acts alleged above, Defendant engaged in unconscionable, deceptive, and unfair acts and practices by charging weight-based prices for the Poultry but delivering less weight than was promised without adjusting the price.  Plaintiff and the Class were

therefore damaged in the amount of the difference between what they paid for and what Defendant Cheney actually delivered.   In committing the acts alleged above, Defendant engaged in unconscionable, deceptive, and unfair acts and practices by delivering less than it led buyers to believe they would receive, effectively charging higher prices but providing lower weights than promised and paid for.

82.    Defendant's conduct is unconscionable, deceptive and unfair, since it is likely to, and did, mislead consumers acting reasonably under the circumstances.   Plaintiff and Class Members, as consumers, used the carton weights, prices and values Defendant advertised and represented for financial forecasts, thus depriving Plaintiff and Class Members of the actual weights for which they ordered and paid.

83.    Defendant's conduct directly and proximately caused harm to Plaintiff and Class Members because they were wrongfully deprived of the proper amount of Poultry for which they paid.  The Packaged Foods Plaintiff and Class Members received had less value as delivered than the supposed goods Defendant represented it would provide.

84.    Plaintiff reserves the right to allege other violations of FDUTPA as discovery unfolds and as Defendant's conduct remains ongoing.

85.    As a direct and proximate result of the unconscionable, unfair, and deceptive acts or practices alleged herein, Defendant has damaged Plaintiff, who has been damaged and is entitled to recover actual damages, to the extent permitted by law, pursuant to Florida Statutes § 501.211, in an amount to be proven at trial.  In addition, pursuant to Florida Statutes § 501.211, Plaintiff seeks equitable relief and to enjoin Defendant on terms the Court considers reasonable.  Plaintiff also seeks reasonable attorneys' fees and costs, as prescribed by § 501.211(2) Florida Statutes.

## COUNT II
## DECEPTIVE AND UNFAIR TRADE PRACTICES ACT - UNFAIRNESS

86.     Plaintiff realleges the allegations contained in paragraphs 1 through 62 above, as if fully set forth herein.

87.     Plaintiff is a "consumer" as defined by Florida Statute § 501.203(7).  FDUTPA explicitly and expansively defines a statutory "consumer" to include businesses like Plaintiff:

> "Consumer" means an individual; child, by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity, however denominated; or any other group or combination. Fla. Stat. § 501.203(7).

In this case, Plaintiff acted as a consumer because it bought from Defendant, and paid for, Packaged Foods, consisting of Poultry, as described further in this Complaint.

88.     Plaintiff's subject transaction for Poultry is "trade or commerce" as defined by Florida Statute § 501.203(8).  As defined by FDUTPA, "trade or commerce" includes soliciting, offering, distributing, by sale or otherwise, any good, service, or tangible or intangible property or commodity.  *Id.*  Defendant offered, sold, and distributed the Poultry, and other Packaged Foods, to Plaintiff and other buyers within the State of Florida, engaging in Florida trade and commerce.

89.     Cheney Brothers violated FDUTPA through its Shorting Practice, as described in this Complaint.  Cheney Brothers Shorting Practice violated FDUTPA because it delivered Poultry to Plaintiff that weighed less than Cheney Brothers represented, and contrary to how it represented the Poultry would be packaged and priced.  Defendant used its commercial experience and other commercial advantages in an inequitable manner, representing it charged weight-based prices but delivering less weight than represented, without adjusting the price.  Defendant thereby marketed and sold Packaged Foods at one price and weight but delivered less than sold, engaging in an unfair, unethical, and unscrupulous practice in violation of FDUTPA, Fla. Stat. § 501.204.

90.     Defendant Cheney's Shorting Practice caused substantial harm to Plaintiff and other Poultry buyers, consisting of increased costs for chicken previously bargained for, short deliveries of chicken previously bargained for, and the loss of certainty of Poultry as Plaintiff and other buyers had budgeted and planned for and thought they had ordered.  These concrete costs were substantial due to their ongoing and class-wide basis.

91.     Defendant Cheney's Shorting Practice did not produce any countervailing benefits to consumers.  The missing Poultry was not accompanied by any consumer's savings, because Defendant charged the full price per pound, and did not provide any increase in service or product quality.

92.     Plaintiff and other buyers could not avoid being harmed by Defendant's Shorting Practice.  First, the contract created by the invoices described above contained no warning Defendant would deliver less chicken than agreed by the parties.  Second, Defendant withheld or failed to generate critical price or performance data, leaving buyers with insufficient information or basis for informed comparison shopping.   In combination with that material omission of information, Defendant's conduct in manipulating its deliveries unreasonably created or takes advantage of the hidden nature of the delivery being short, an obstacle to a buyer's free exercise of consumer decision-making.

93.     Defendant's Shorting Practice violates public policy because it violates generally recognized business ethics and reasonable product delivery principles.  Defendant's violation conferred an unfair cost advantage on Defendant in comparison to the cost of ethical, full-weighted deliveries by any rival distributors that live up to their promises.

94.     Defendant's unfair and deceptive practices described in this Complaint were unfair to Plaintiff, other Class Members, and other members of the pubic, despite the buyers acting reasonably under the circumstances.

95.     In committing the acts alleged above, Defendant engaged in unfair acts and practices by charging weight-based prices for the Poultry but delivering less weight than was promised without adjusting the price.  Plaintiff and the Class were therefore damaged in the amount of the difference between what they paid for and what Defendant Cheney actually delivered. Defendant's acts and practices were also unfair in delivering less than Defendant led buyers to believe they would receive, because Defendant effectively charged a higher price but provided lower weights than promised and paid for.

96.     Defendant's conduct is unfair within FDUTPA's meaning, since it is likely to, and did, take advantage of consumers acting reasonably under the circumstances.  Plaintiff and Class Members, as consumers, used the carton weights, prices and values Defendant advertised and represented for financial forecasts, thus depriving Plaintiff and Class Members of the actual weights for which they ordered and paid.

97.     Defendant's conduct directly and proximately caused harm to Plaintiff and Class Members because they were wrongfully deprived of the proper amount of Poultry for which they paid.  The Packaged Foods Plaintiff and Class Members received had less value as delivered than the supposed goods Defendant represented it would provide.

98.     Plaintiff reserves the right to allege other violations of FDUTPA as discovery unfolds and as Defendant's conduct remains ongoing.

99.     As a direct and proximate result of the unconscionable and unfair acts or practices alleged herein, Defendant has damaged Plaintiff, who has been damaged and is entitled to recover

actual damages, to the extent permitted by law, pursuant to Florida Statutes § 501.211, in an amount to be proven at trial.  In addition, pursuant to Florida Statutes § 501.211, Plaintiff seeks equitable relief and to enjoin Defendant on terms the Court considers reasonable.  Plaintiff also seeks reasonable attorneys' fees and costs, as prescribed by § 501.211(2) Florida Statutes.

**COUNT III**
**BREACH OF CONTRACT**

100.    Plaintiff realleges the allegations contained in the paragraphs 1 through 68 above, as if fully set forth herein.

101.    Plaintiff, like other Class Members, entered into a contract with Cheney Brothers for the purchase of various goods for eventual resale to consumers through Plaintiff's restaurant operation.  Specifically, Plaintiff entered into a supply agreement with Defendant that provided for pricing to be based on a fee per pound.  Plaintiff and Cheney Brothers agreed that Cheney Brothers would set the price per actual pound.  Cheney Brothers was obligated to set this price per pound in good faith, using the actual weight of the delivery.  This price per actual pound was to be the true price under the agreement.  The parties agreed the price per pound and number of pounds of poultry would be accurately stated on an invoice for each shipment.  Copies of invoices are attached as Exhibits 1 to 4 of this Complaint.  As part of these contracts, Plaintiff and the Class Members purchased Packaged Foods including Poultry from Defendant.  However, despite having agreed to deliver and charge based on specified weights, Cheney Brothers delivered lower weights while simultaneously charging for the original higher weights.  For example, a Cheney Brothers' sale promised and charged for 40-pound cases of chicken breasts, each containing four 10-pound bags, but the carton's bag after thawing weighed only 9.475 pounds, indicating 37.5 pounds of chicken for each purportedly 40-pound case.  Even after allowing 2%for fluids, each case would be short 1.3 pounds, and the five cases ordered on that occasion would be short 6.5 pounds, or

$8.00 worth of chicken.  Plaintiff paid Cheney Brothers' inflated prices for the Poultry as charged in Cheney Brothers' invoice.

102.    Defendant materially breached its contract with Plaintiff and Class Members when it delivered less Poultry than promised but charged and collected a sum of money for Poultry as Cheney represented and as the parties had contractually agreed.  Plaintiff and Class Members have sustained damages consisting of the difference in price between what was purchased and what should have been delivered.  Cheney Brothers' breach of the agreement directly caused said overpayment.

103.    Plaintiff received and accepted the Packaged Foods, including the deficient Poultry deliveries.  Plaintiff paid Cheney Brothers' inflated invoice for the goods, and Cheney Brothers accepted Plaintiff's payment.  Plaintiff overpaid because Cheney Brothers' inflated invoice did not reflect the true price under the agreement.   Plaintiff notified his Cheney Brothers sales representative, Robert S. Sheffield, on several occasions by telephone and in person, of Cheney Brothers' breach of contract, all of which preceded the filing of this Complaint.

104.    By and through the conduct alleged herein, Defendant has received, had use of, and accrued interest on these funds wrongfully obtained from Plaintiff and other Class Members.

105.    Defendant directly and proximately caused harm to Plaintiff by delivering less Poultry than the parties had agreed on, and less than Plaintiff paid for because of Defendant's improper Shorting Practices.  Accordingly, Plaintiff, like other Class Members, has suffered pecuniary harm as a direct and proximate result of Defendant's conduct.  Plaintiff and other Class Members also have and will sustain incidental damages for inspection and analysis of Cheney Brothers' deliveries.

## COUNT IV
## BREACH OF WARRANTY

106.     Plaintiff realleges the allegations contained in the paragraphs 1 through 68 above, as if fully set forth herein.

107.     Plaintiff, like other Class Members, entered into a contract with Defendant Cheney Brothers for the purchase of various Packaged Foods for eventual resale to consumers through Plaintiff's restaurant business.   Specifically, Plaintiff entered into a supply agreement with Defendant that provided for pricing to be based on a fee per pound.  Plaintiff and Cheney Brothers agreed that Cheney Brothers would set the price per actual pound.  Cheney Brothers was obligated to set this price per pound in good faith, using the actual weight of the delivery.  This price per actual pound was to be the true price under the agreement.

108.     Accordingly, the parties completed a sale of goods from Defendant to Plaintiff, and Defendant made sales of goods to other Class Members.  Since Cheney Brothers communicated directly to Plaintiff and other Class Members, and Plaintiff, like other Class Members, purchased Packaged Foods directly from Cheney Brothers, the parties were in privity for these transactions.

109.     Cheney Brothers' statements, and particularly its invoices, affirmed the purported fact that a particular delivery would include a stated amount of Poultry, with the net weight accurately stated on the invoice.  This affirmation of fact constituted an express warranty that Defendant's shipments included Poultry in the amounts stated by the literal net weight ordered and stated on the invoice.  Plaintiff relied on and accepted these warranties in the order agreements and invoices, making them part of the basis of Plaintiff's bargain with Cheney Brothers.  Accordingly, Cheney Brothers warranted that the delivered Poultry would conform to the weight of the Poultry per carton and in total, as literally agreed to and stated on the invoices.

110.    As described herein, despite having agreed to deliver Packaged Foods, including the Poultry based on accurate actual weights, Cheney Brothers delivered lower net weights than stated in its invoices, while simultaneously claiming and charging for a higher weight than it actually delivered to Plaintiff.  Cheney Brothers materially breached its express warranty stated in this Count by delivering less Poultry than it promised and stated it was delivering.

111.    Defendant was on notice of this breach since it kept track of its own invoices and Plaintiff's payments in Defendant's billing and accounting systems.

112.    Plaintiff received and accepted the Packaged Foods, including the Poultry.  Plaintiff paid Cheney Brothers' inflated invoice for the goods, and Cheney Brothers accepted Plaintiff's payment.  Plaintiff overpaid because Cheney Brothers' delivery did not reflect the true weight, or the true price under the agreement.  Plaintiff notified his Cheney Brothers sales representative, Robert S. Sheffield, on several occasions by telephone and in person, of Cheney Brothers' breach of contract, all of which preceded the filing of this Complaint.

113.    Defendant Cheney Brothers directly and proximately caused harm to Plaintiff Salgiobria by delivering less Poultry than the parties had agreed on, and less than Plaintiff paid for because of Defendant's improper Shorting Practice.   Accordingly, Plaintiff, like other Class Members, has suffered pecuniary harm as a direct and proximate result of Defendant's conduct. Plaintiff, like other Class Members, is entitled as damages to the difference between the value of the goods as accepted and the value as they would have had if they had been as warranted.  Plaintiff and other Class Members also have and will sustain incidental damages for inspection and analysis of Cheney Brothers' deliveries.

## COUNT V
## UNJUST ENRICHMENT

114.    Plaintiff realleges the allegations contained in the paragraphs 1 through 68 above, as if fully set forth herein.

115.    Alternatively to Counts III and IV, Plaintiff pleads this claim for unjust enrichment in case the Court finds Plaintiff had no cognizable contract with Cheney Brothers, or that such a contract is unlawful.

116.    Plaintiff entered into a supply agreement with Defendant that Plaintiff understood meant Cheney Brothers would deliver Packaged Foods, including Poultry, based on an actual net weight, and price per pound of Poultry, net weight.  Plaintiff and Cheney Brothers agreed that Cheney Brothers would fix the price per actual pound, which Cheney Brothers was obligated to set in good faith, using the actual net weight of the delivery, as literally stated in the invoices. Cheney Brothers' statements, and particularly its invoices, affirmed the purported fact that a particular delivery would include a stated amount of Poultry, with the net weight accurately stated on the invoice.  Plaintiff relied on and accepted the literal weights stated in the invoices.

117.    Instead, despite having agreed to charge for the Packaged Foods, including the Poultry, based on accurate weights, Cheney Brothers delivered lower weights than stated in its invoices, while simultaneously claiming and charging for a higher weight than it actually delivered to Plaintiff.  Plaintiff paid Cheney Brothers' inflated invoice for the goods, and Cheney Brothers accepted Plaintiff's payment.  Plaintiff overpaid because Cheney Brothers' inflated invoice did not reflect the true price under the agreement as represented and as Plaintiff understood the agreement and the invoices.  Plaintiff thereby conferred a benefit on Defendant.

118.    Cheney Brothers knowingly and voluntarily accepted and retained Plaintiff's overpayment, and has kept track of Plaintiff's payments in its billing system.  Cheney Brothers

has retained the resulting benefits of payments, being profits and use of those funds, with full knowledge and awareness that, as a result of Cheney Brothers misstatements, Plaintiff did not receive the full amount of product that Cheney Brothers represented and that Plaintiff, like other Class Members, reasonably expected.

119.    Defendant has been unjustly enriched by its unfair and deceptive retention and withholding of benefits from Plaintiff and the Class, at the expense of Plaintiff and the Class. Under the circumstances, it would be inequitable for Cheney Brothers to retain the benefit without paying for it.

120.    Plaintiff and the Class seek the disgorgement and restitution of Defendant's wrongful profits, revenue and benefits, plus interest, to the extent and in the amount deemed appropriate by the Court.  Plaintiff requests such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of Class Members proposed in this Complaint, respectfully requests the Court enter judgment in Plaintiff's and other Class Members' favor and against Defendant as follows:

A.    For an Order certifying the proposed Class, and appointing Plaintiff and Plaintiff's Counsel to represent the Class;

B.    For an Order permanently enjoining Defendant from its improper conduct and practices as alleged herein;

C.    For a judgment awarding Plaintiff and Class Members damages, including, without limitation, the sums overpaid for the deficient deliveries of Packaged Foods, with interest, as a result of Defendant's breach of contract, unfair, deceptive, and unconscionable business practices and conduct;

D.      For an award of costs of suit and attorneys' fees, costs, and expenses, as allowable by law, including Fla. Stat. § 501.211(2); and

E.      For such other and further relief as this Court may deem just and proper.

### JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury of all claims in this Class Action Complaint so triable.


Dated: October 18, 2021            **CAMPBELL LAW**

By:  /s/ D. Michael Campbell
D. Michael Campbell (FL Bar No. 650188)
PO Box 24358
Lakeland, FL  33802-4358
Telephone:  863-227-4315
dmcampbell@campbelllaw.com


**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Robert K. Shelquist, (MN Bar No. 21310X) (*pro hac vice*)
Rebecca A. Peterson,  (MN Bar No.392663) (*pro hac vice*)
Craig S. Davis  (MN Bar No. 14892) (*pro hac vice*)
100 Washington Ave. S., Suite 2200
Minneapolis, MN 55401
Telephone:  612-339-6900
rkshelquist@locklaw.com
rapeterson@locklaw.com
csdavis@locklaw.com

**MILLER SHAH LLP**
James Shah (*pro hac vice to be filed*)
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
jcshah@millershah.com

**MILLER SHAH LLP**
Nathan C. Zipperian (FL Bar No. 61525)
1625 N. Commerce Parkway, Suite 320
Ft. Lauderdale, FL 33326
Telephone: (866) 540-5505
nczipperian@millershah.com

**Attorneys for Plaintiff**